IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VALERIE KREGER-MUELLER.,

                        Plaintiff,

    v.

ASHLEY DOE (ACCESS COMMUNITY HEALTH),
AUTUMN DOE (ACCESS COMMUNITY HEALTH),
DR. JUSTIN SHINER, DR. STUART JONES,
DR. MICHAEL PETERSON,
DR. YELENA MIRONOVA CHIN,
DR. MATTHEW SAGER, DR. TAD HERBSMAN,          OPINION and ORDER
AMY EDWARDS, TIAGAN DAHL, PETER LORR,
THERESA BEDNAREK, DALE BARRETT,                  18-cv-708-jdp
DR. ROBERT FACTOR, LORI BLAHNIK,
ASHLEY MESSIER, KAREN MILNER,
DR. JIM BLACK, DR. LESLIE TAYLOR,
DR. KEVIN MILLER, SYDNEY MBAINAI
(ATTORNEY FOR DANE COUNTY CORPORATION
COUNSEL), KELLY NESVACIL (ATTORNEY FOR
DANE COUNTY CORPORATION COUNSEL, and
VUE YANG (ATTORNEY FOR DANE COUNTY
CORPORATION COUNSEL),

                        Defendants.

---

Pro se plaintiff Valerie Kreger-Mueller filed a proposed civil action against numerous institutional defendants, including a police department, a county government office, and various health care institutions in Dane County. Dkt. 1 and Dkt. 5. In a December 6, 2018 order, I reviewed her initial complaint and amended complaint and concluded that they failed to state claims upon which relief could be granted because, among other things, they violated Federal Rules of Civil Procedure 8, 18, and 20. I offered Kreger-Mueller an opportunity to file an amended complaint identifying which one of the eight possible lawsuits from her complaint she wished to proceed on under this case number. Dkt. 7.

Kreger-Mueller has responded by filing six proposed amended complaints. These complaints appear to track two sets of allegations—one set against 25 officers from the Middleton Police Department, and another against 20 individuals from local health clinics and three attorneys for the Dane county Corporation Counsel. *Compare* Dkt. 11 and Dkt. 13 (claims against Middleton police officers) *with* Dkt. 10; Dkt. 14; Dkt. 19; Dkt. 21 (claims against healthcare providers and Dane County Corporation Counsel attorneys). For purposes of screening these complaints, I have reviewed only the latest complaint for each set of allegations, Dkt. 13 and Dkt. 21. The other documents, Dkt. 11, Dkt. 10, Dkt. 14, and Dkt. 19, are struck under Rule 12(f) because they are now immaterial. Because Kreger-Mueller cannot proceed with two separate lawsuits under a single case number, I will direct the clerk of court to docket Kreger-Mueller's complaint against the Middleton police, Dkt. 13, and the motions she has filed in connection with that complaint, Dkt. 16 and Dkt. 17, under a new case number. Because I am satisfied from Kreger-Mueller's previously filed financial information that she cannot prepay the filing fee, *see* Dkt. 4, Kreger-Mueller need not seek leave to proceed *in forma pauperis* in that case. I will screen those claims in a separate order once the clerk's office has opened the second case.

In this order, I will screen Kreger-Mueller's amended complaint against the 20 healthcare providers and Dane County Corporation Counsel attorneys, Dkt. 21. In doing so, I must dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2). Kreger-Mueller's amended complaint suffers from many of the same defects as her original filings. With the exception of one set of claims against four doctors from the University of Wisconsin Hospital and Clinics who Kreger-Mueller says

2

forcibly medicated her, Kreger-Mueller's amended complaint fails to assert claims upon which relief can be granted. So I will dismiss all but those four defendants. I will grant Kreger-Mueller leave to proceed on Fourteenth Amendment due process and medical malpractice claims against defendants Justin Shiner, Yelena Mironova-Chin, Stuart Jones, and Michael Peterson.

In addition to an amended complaint, Kreger-Mueller has filed a motion to seal the records in this case, Dkt. 17, and three motions for injunctive relief, Dkt. 15; Dkt. 18; Dkt. 19. I will deny those motions for the reasons explained below.

ANALYSIS

Kreger-Mueller's amended complaint contains the following allegations, which I paraphrase:

- Defendants Ashley and Autumn Doe, two employees at Access Community Health Clinic East in Madison, Wisconsin, lied by saying that Kreger-Mueller had "made a negative statement towards the clinic" over the phone. Dkt. 21, ¶ 1. Access Community Health engaged in medical malpractice and violated Kreger-Mueller's HIPAA rights by telling police that Kreger-Mueller was a patient at the clinic and about the private phone conversation.

- Personnel from St. Mary's Hospital, including defendants Dr. Tad Herbsman and Dr. Matthew Sager and non-defendant nurses Theresa and Josh, "made false statements about [Kreger-Mueller] and what [she] said in medical records." *Id.* ¶ 2. Sager threatened to interfere with Kreger-Mueller's child custody arrangement and to inject her with dangerous medications.

- Personnel from the UW Hospital and Clinics, including defendants Drs. Justin Shiner, Yelena Mironova-Chin, Stuart Jones, and Michael Peterson committed medical malpractice by overdosing Kreger-Mueller on dangerous medications despite her objections.

3

- Defendant Amy Edwards, who I infer works at Journey Mental Health in Madison, Wisconsin, ordered that Kreger-Mueller be detained on August 23, 2016, August 30, 2016, March 1, 2018, and October 10, 2018, even though Kreger-Mueller was not suicidal or homicidal and there was no probable cause to detain her. This caused Kreger-Mueller to miss out on a potential job opportunity. Edwards has also repeatedly made false statements in Kreger-Mueller's medical records, including a statement on March 1, 2018 that Kreger-Mueller's apartment was dirty. As a result of Edwards's interference, Kreger-Mueller was evicted from her apartment.

- Defendant Tiagan Dahl violated Kreger-Mueller's HIPAA rights by giving confidential information about her to a Middleton police officer, who put that information into a public record.

- Personnel at the Dane County Corporation Counsel (presumably Sydney Mbainai, Kelly Nesvacil, and Vue Yang, the defendants listed in the caption of Kreger-Mueller's complaint as corporation counsel) "repeatedly petition that [Kreger-Mueller's] involuntary commitment be extended excessively" even though Kreger-Mueller has no symptoms of any psychological diagnosis. *Id.* ¶ 8.

- Defendants (Kreger-Mueller does not specify which ones) have placed Kreger-Mueller on an indefinite involuntary comment and have recommended that it be extended year after year based on "nuisance police calls," which "is no basis to place someone on an involuntary commitment according to [defendant] Dr. Kevin Miller." *Id.* ¶ 9. Nonetheless, when Miller met with Kreger-Mueller, he treated it "as an interrogation and investigation rather than an examination." *Id.*

- "[A]ll of the defendants named have contributed to the loss of primary placement custody of [Kreger-Mueller's] minor daughter." *Id.* at 4. Specifically, defendants Dahl and Edwards, along with staff at Access Community Health aided Kreger-Mueller's daughter's father in obtaining primary custody by falsely imprisoning Kreger-Mueller in a facility so that the father could get custody. Dahl and Edwards also violated the Privacy Act of 1974.

4

- Kreger-Mueller "has been discriminated against due to her physical disability that requires the use of a cane and a wheelchair at times." *Id.*

These allegations present several problems, several of which I noted in my original screening order, Dkt. 7.

## A. Unexplained defendants and claims

As an initial matter, nine of the defendants that Kreger-Mueller lists in the caption of her amended complaint (Peter Lorr, Theresa Bednarek, Dale Barrett, Dr. Robert Factor, Lori Blahnik, Ashley Messier, Karen Milner, Dr. Jim Black, and Dr. Leslie Taylor) are not mentioned in Kreger-Mueller's allegations. It is not clear what claims Kreger-Mueller intends to assert against them, so I will dismiss them from the case.

Likewise, Kreger-Mueller makes a general allegation that she has been "discriminated against due to her physical disability that requires the use of a cane and a wheelchair at times." Dkt. 21, ¶ at 4. But she doesn't explain who discriminated against her and how, so I will dismiss that claim as well.

## B. Claims over which this court lacks jurisdiction

"Federal courts are courts of limited jurisdiction," which means they can entertain only certain types of controversies. *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009). Generally, a plaintiff suing in federal court must show either that she is raising a federal claim, 28 U.S.C. § 1331 (known as federal-question jurisdiction), or that she and the defendants are citizens of different states and that more than $75,000 is in controversy, 28 U.S.C. § 1332 (known as diversity jurisdiction). Here, there is no indication that the parties in this case are citizens of different states, so I assume that Kreger-Mueller is asking me to exercise federal-question jurisdiction rather than diversity jurisdiction.

5

Under § 1331, I can exercise jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Kreger-Mueller attempts to identify three sources of federal jurisdiction: (1) 42 U.S.C. § 1983, based on alleged violations of her constitutional rights; (2) the Health Insurance Portability and Accountability Act of 1996 (HIPAA); and (3) the Privacy Act of 1974.

Kreger-Mueller's amended complaint does not state a claim for relief under HIPAA or the Privacy Act of 1974. As I previously explained, individual persons cannot sue to enforce HIPAA because HIPAA does not create a private right of action to sue in federal court. *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011); *Franklin v. Wall*, No. 12-cv-614, 2013 WL 1399611, at *2 (W.D. Wis. Apr. 5, 2013). The Privacy Act of 1974 governs how federal agencies may collect, use, and disseminate personal information about individuals. It creates a private right of action for individuals injured by an agency's violation of its provisions, *see* 5 U.S.C. § 552a(g), but that is of no help to Kreger-Mueller because she has not named any federal agency as a defendant.

That leaves 42 U.S.C. § 1983, which provides for federal jurisdiction over claims for violations of a plaintiff's federal constitutional rights.

1. **Non-state actors**

Many of Kreger-Mueller's allegations do not state a claim for relief under § 1983 because they involve non-state actors. As I previously explained to Kreger-Mueller, the Constitution applies only to "state actors," who generally are government employees or those acting on the government's behalf. *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 923–24 (1982). Many of the defendants Kreger-Mueller identifies work for private, non-state actors, like Access Community Health, St. Mary's Hospital, and Journey Mental Health. "Private

6

facilities and their employees do not engage in state action by virtue of their participation in [the involuntary commitment] process." *de Vryer v. Maryville Acad.*, 544 F. App'x 653, 654 (7th Cir. 2013). This is true even though those private actors use state-law procedures to initiate and pursue an involuntary commitment. *Spencer v. Lee*, 864 F.2d 1376, 1377 (7th Cir. 1989). Theoretically, Kreger-Mueller could state claims against these defendants if these private entities were providing care to Kreger-Mueller under a contract with the State of Wisconsin. *See de Vryer*, 554 F. App'x at 654 (collecting cases). But there is no indication that this was the case here. So I will dismiss Kreger-Mueller's claims against employees of Access Community Health, St. Mary's Hospital, and Journey Mental Health.

   2. **State actors**

Kreger-Mueller does identify some defendants who work for government entities: three attorneys from the Dane County Corporation Counsel (Sydney Mbainai, Kelly Nesvacil, and Vue Yang) and four doctors from the University of Wisconsin Hospital and Clinics (Justin Shiner, Yelena Mironova-Chin, Stuart Jones, and Michael Peterson).

   a. **Claims against Dane County Corporation Counsel attorneys for involuntary commitment without probable cause**

Kreger-Mueller alleges that "[p]ersonnel at the Dane County Corporation Counsel repeatedly petition[ed] that [Kreger-Mueller's] involuntary commitment be extended excessively," even though she "is not having police contact" and is "not suicidal, . . . homicidal, or even 'symptomatic' of any psychological diagnosis." *Id.* ¶ 8. The corporation counsel's office is the entity responsible for representing "the interests of the public" in involuntary commitment proceedings, *see* Wis. Stat. § 51.20(4), and I assume that the corporation counsel

attorneys named as defendants in this case are the ones who handled Kreger-Mueller's involuntary commitment proceedings.

Kreger-Mueller contends that the corporation counsel attorneys violated her rights by involuntarily committing her without probable cause. But this does not state a claim for relief because corporation counsel attorneys enjoy absolute immunity from suit under § 1983 for alleged injuries that stem from their performance of their prosecutorial duties. Under the doctrine of absolute prosecutorial immunity, a prosecuting officer cannot be liable under § 1983 "even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *see also Imbler v. Pachtman*, 424 U.S. 409, 424–28 (1976) (explaining the policy rationales that underlie the doctrine of absolute prosecutorial immunity). Here, "[t]he actions in which defendants allegedly engaged, *e.g.*, prosecuting [Kreger-Mueller's] continued civil commitment, are exactly the sort of prosecutorial conduct that immunity protects." *Barksdale v. Joyce*, No. 16 C 11444, 2017 WL 6506446, at *2 (N.D. Ill. Feb. 9, 2017), *aff'd*, 696 F. App'x 746 (7th Cir. 2017), *reh'g denied* (Oct. 17, 2017). So I will dismiss Kreger-Mueller's claims against defendants Mbainai, Nesvacil, and Yang.

### b. Claims against UW healthcare providers for forced medication

That leaves Kreger-Mueller's claims against the four UW doctors. Kreger-Mueller alleges that the UW defendants "committed medical malpractice by overdosing [her] on dangerous medication and not listening to [her] pleadings that [she may have been] having an allergic reaction to the medication." Dkt. 21, ¶ 3. As I have previously explained, medical malpractice is a state-law tort claim, not a violation of federal law. I can exercise jurisdiction

over a medical malpractice claim only if there is a related federal claim over which I have jurisdiction.

That said, Kreger-Mueller's allegations against the UW defendants may give rise to a federal claim: a violation of her right to due process under the Fourteenth Amendment. Neither the Supreme Court nor the Seventh Circuit has decided whether civilly committed individuals have a constitutional right to refuse psychotropic drugs. *See Disability Rights New Jersey, Inc. v. Comm'r, New Jersey Dep't of Hum. Servs.*, 796 F.3d 293, 296 (3d Cir. 2015) (discussing history of Supreme Court litigation on this issue); *see also Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397, 408–09 (7th Cir. 1993) (discussing relevant case law in context of assessing whether law was clearly established for qualified-immunity purposes). But the Supreme Court has held that prisoners have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," *Washington v. Harper*, 494 U.S. 210, 221 (1990), and at screening I can assume that non-prisoners like Kreger-Mueller enjoy that liberty interest as well.

Any interest in avoiding unwanted administration of medication must be balanced against the state's competing interests, such as its interest in preserving public safety and the safety of the patient in question. *Id.* at 225. Generally speaking, "due process allows a mentally ill inmate to be treated involuntarily with antipsychotic drugs where there is a determination that 'the [detainee] is dangerous to [her]self or others and the treatment is in the [detainee's] medical interest.'" *Riggins v. Nevada*, 504 U.S. 127, 134 (1992) (quoting *Harper*, 494 U.S. at 227)). But here, Kreger-Mueller alleges that the UW defendants repeatedly "overdos[ed]" her on medications despite Kreger-Mueller's "pleas to reduce the dosage or change the medication altogether." Dkt. 21, ¶ 3. For purposes of screening, I will assume that Kreger-Mueller's forcible overdosing allegations state a claim under the Fourteenth Amendment. I will therefore allow

her to proceed on Fourteenth Amendment claims against defendants Shiner, Mironova-Chin, Jones, and Peterson.

Because Kreger-Mueller has stated federal claims against the four UW defendants, I may exercise supplemental jurisdiction over state-law causes of action "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This means that I can hear both federal and state-law claims when the central facts of the federal claim are also the central facts of the state-law claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, Kreger-Mueller's medical malpractice claims are certainly intertwined with her claim that the four UW defendants violated her Fourteenth Amendment rights by forcibly medicating her against her will. To prevail on a claim for medical malpractice in Wisconsin, Kreger-Mueller must prove the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) injury or damages. *Paul v. Skemp*, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865 (2001). Therefore, "a claim for medical malpractice requires a negligent act or omission that causes an injury." *Id.* I can infer from Kreger-Mueller's overdosing allegations that the UW defendants' actions were negligent, so I will grant her leave to proceed on malpractice claims under Wisconsin law against defendants Shiner, Mironova-Chin, Jones, and Peterson.

**C. Motion to seal**

Kreger-Mueller has filed a motion to "seal records due to the nature of the case." Dkt. 17. Court records are "presumptively open to public view, even if [plaintiff] strongly prefer[s] secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Kreger-Mueller provides no explanation why she is entitled to

confidentiality in this case, so I will deny her motion. If documents pertaining to sensitive health care matters become relevant, I will permit the parties to file them under seal. But Kreger-Mueller has filed a case about her mental health treatment, so she will need to make public the information relevant to her claims. I will not seal the entire docket absent truly exceptional circumstances. "[L]itigants who enjoy publicly subsidized dispute resolution should expect public oversight." *City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014).

**D. Motions for injunctive relief**

Kreger-Mueller has also filed three motions seeking injunctive relief. Dkt 15; Dkt. 18; Dkt. 20. In the first motion, she asks me to order the defendants to "refrain from giving out personal and confidential information" about her, and to "refrain from having . . . contact" with her. Dkt. 15, at 1. In the second, she reiterates her previous requests and asks me to order defendants to cease "extend[ing] the petition for the civil commitment."" Dkt. 18, at 2. The third motion is substantively identical to the first and second, except it contains an additional paragraph in which Kreger-Mueller asks for an "injunction to terminate a current involuntary commitment order against Dane County and Journey Mental Health Center and to restore the plaintiff's civil rights." Dkt. 20, at 2.

These motions do not comply with this court's rules for motions seeking injunctive relief, which include a requirement that the party seeking an injunction file detailed findings of fact explaining the events supporting the need for an injunction. I will attach a copy of those procedures to this order. Kreger-Mueller's second injunction motion also raises a separate problem, which is that a lawsuit under § 1983 is not the proper vehicle for challenging an involuntary commitment. Section 1983 cannot be used to challenge the fact or duration of

confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973). Individuals who have been involuntarily committed and wish to challenge the fact or duration of their confinement may seek relief only through a habeas corpus petition under 28 U.S.C. 2254. *Duncan v. Walker*, 533 U.S. 167, 176 (2001) (holding that a state court order of civil commitment satisfies § 2254's "in custody" requirement).

Accordingly, I will deny Kreger-Mueller's motions for injunctive relief. If she seeks injunctive relief in the future, she should follow this court's rules by submitting detailed findings of fact. Kreger-Mueller may not challenge the fact or duration of any involuntary commitment in this § 1983 action. Instead, she should seek relief in state court and, if necessary, file a habeas petition under 28 U.S.C. 2254.

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to docket plaintiff Valerie Kreger-Mueller's complaint against the Middleton police, Dkt. 13, and the motions she has filed in connection with that complaint, Dkt. 16 and Dkt. 17, under a new case number. Because the court is satisfied that plaintiff is unable to prepay the fees and costs of commencing a new action, she may proceed *in forma pauperis* in that case without submitting a separate request.

2. Dkt. 10, Dkt. 11, Dkt. 14, and Dkt. 19 are STRUCK under Federal Rule of Civil Procedure 12(f).

3. Plaintiff is GRANTED leave to proceed on Fourteenth Amendment due process claims and state-law medical malpractice claims against Justin Shiner, Yelena Mironova-Chin, Stuart Jones, and Michael Peterson.

4. Plaintiff's remaining claims in this case are DISMISSED for failure to state a claim.

5. The United States Marshal will serve the summons and complaint on the defendants. The clerk of court is directed to forward copies of plaintiff's complaint, Dkt. 21, and this order to the United States Marshal for service on the defendants.

6. Plaintiff must send the defendants a copy of every paper or document that she files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be

representing the defendants, she should serve the lawyer directly rather than the defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that she has sent a copy to the defendants or to defendants' attorney.

7. Plaintiff should keep a copy of all documents for her own files. If she is unable to use a photocopy machine, she may send out identical handwritten or typed copies of his documents.

8. If plaintiff moves while this case is pending, it is plaintiff's obligation to inform the court of her new address. If she fails to do this and defendants or the court is unable to locate her, her claims may be dismissed for her failure to prosecute them.

9. Plaintiff's motion to seal, Dkt. 17, is DENIED without prejudice.

10. Plaintiff's motions for injunctive relief, Dkt. 15, Dkt. 18, and Dkt. 20, are DENIED without prejudice.

Entered September 9, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge